UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

DJT PROPERTIES, LLC, a Michigan limited
Liability company,

        Plaintiff,

Case No.  1:21-cv-00182

HON. JANET T. NEFF

v.

CITY OF ROCKFORD, a Michigan municipal
Corporation, the CITY OF ROCKFORD
PLANNING COMMISSION, and the CITY
OF ROCKFORD CITY COUNCIL,

        Defendants.

_____

| | |
|---|---|
| Christian E. Meyer (P56037) | Michael S. Bogren (P34855) |
| Gaetan Gerville-Reache (P68718) | Attorney for Defendants |
| Lucy J. McManaman (P84720) | PLUNKETT COONEY |
| Attorneys for Plaintiff | 333 Bridge Street, NW, Suite 530 |
| WARNER NORCROSS & JUDD LLP | Grand Rapids, Michigan  49504 |
| 150 Ottawa Avenue NW | (269) 226-8822 |
| Grand Rapids, Michigan   49503 | mbogren@plunkettcooney.com |
| 616-752-2000 | |

**ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES
AND JURY DEMAND**

NOW COME defendants, CITY OF ROCKFORD, CITY OF ROCKFORD PLANNING

COMMISSION, and the CITY OF ROCKFORD CITY COUNCIL[1], by and through their attorneys,

PLUNKETT COONEY, and for their Answer to Plaintiff's Complaint, state:

**INTRODUCTION**

---

[1] Although the plaintiff has named three defendants – the City of Rockford, the City of Rockford Planning Commission, and the City of Rockford City Council – only the City of Rockford is the true party in interest. The City of Rockford Planning Commission and the City of Rockford City Council are not separate legal entities capable of being sued. The Answer will therefore refer to the singular defendant City of Rockford.

ALLEGATION 1.    Defendants have singled out DJT Properties' MIXED-USE COMMERCIAL BUILDING AT 8 AST Bridge Street NE in downtown Rockford (the "**Subject Property**") with unlawfully discriminatory, unreasonable, and confiscatory zoning restrictions.  These restrictions (referred to as the "**Promenade PUD**" and further defined below) have prevented DJT Properties from fully leasing the ground floor of the Subject Property for years, despite the fact that numerous tenants—whose uses are allowed in the ground floor of every other building in downtown Rockford outside of the Promenade PUD— are interested in leasing ground floor space in the Subject Property.

**ANSWER 1.       The allegations contained in paragraph 1 are denied as untrue.**

ALLEGATION 2.    DJT Properties submitted an application ("**PUD Application**") to expand the permitted uses allowed in the ground floor suites of the Subject Property to be more consistent with the uses permitted as of right in every other property in downtown Rockford outside of the Promenade PUD.  The Planning Commission and City Council instead approved an amendment to the Promenade PUD that still prohibited nearly every single new use DJT Properties requested ("**PUD Decision**").

**ANSWER 2.       The defendant objects to paragraph 2 as it is based on an implicit misunderstanding of the status of the subject property. The City of Rockford, as owner of the property, conveyed the property to Promenade of Rockford, LLC. The conveyance included recorded deed restrictions on the use of the property. As part of the transaction the City and Promenade of Rockford, LLC, entered into a Development Agreement based on the recorded deed restrictions. The City incorporated the deed restrictions and Development Agreement into a rezoning of the property from C-2 to Planned Unit Development (PUD). The parties entered into a subsequent Amended and Restated Development Agreement that currently governs the use of the property.**

**Throughout the Complaint the plaintiff makes allegations regarding the land use and zoning process, including references to actions taken by the Planning Commission and the City Council and references to re-zoning requests. However, the allegations ignore the fact that the use of the subject property is controlled by the**

recorded deed restrictions and the Amended and Restated Development Agreement, and unless the terms of that Agreement are revised, the normal zoning amendment process has no applicability.

With these objections stated, the defendant admits the plaintiff applied to revise the recorded deed restrictions, the Amended and Restated Development Agreement and to amend the PUD zoning designation to incorporate the requested revisions. It is also admitted the Planning Commission recommended approval of revisions to the Amended and Restated Development Agreement that expanded the uses allowed on the property and the City Council approved the revisions. The defendant is without knowledge or information sufficient to form a belief as to the plaintiff's subjective motivations for seeking the revisions.

ALLEGATION 3.     The Planning Commission and City Council, in making this decision, essentially ignored the standards in the Rockford Zoning Ordinance ("**Zoning Ordinance**") for approving such changes, and instead relied on their subjective preferences to continue imposing the overly restrictive regulations, treating the Subject Property as if it were privately owned or controlled by the City.

ANSWER 3.          The allegations contained in paragraph 3 are denied as untrue. In further answer the defendant states that due to the existence of the deed restrictions and the Amended and Restated Development Agreement, the ordinary terms and provisions of the Zoning Ordinance did not apply to the subject property in the same manner it would apply to property that was not subject to those restrictions and development agreement.

ALLEGATION 4.     The Defendants' official acts and the use restrictions they have chosen to impose on the Subject Property violate the Zoning Ordinance, the Michigan Zoning Enabling Act ("**MZEA**"), and the Michigan and United States Constitutions.

**ANSWER 4.**          **The allegations contained in paragraph 4 are denied as untrue.**

## PARTIES, JURISDICTION, AND VENUE

ALLEGATION 5.          DJT Properties is a Michigan limited liability company, with its principal business address at 262 South Fremont Street, Rockford, Michigan 49341.

**ANSWER 5.**          **The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5.**

ALLEGATION 6.          The City is a Michigan municipal corporation, with its principal business address at 7 Monroe Street, P.O. Box 561, Rockford, Michigan 49341.

**ANSWER 6.**          **Admitted.**

ALLEGATION 7.          The City Council is the City's legislative body.

**ANSWER 7.**          **It is admitted the City Council is the City's legislative body. It is denied as untrue the City Council is a separate legal entity capable of being sued.**

ALLEGATION 8.          The Planning Commission is the City Council's advisory body for land use decisions and is responsible for planning decisions.

**ANSWER 8.**          **It is admitted the Planning Commission provides recommendations to the City Council on certain land use and zoning issues. The Complaint does not identify what "planning decisions" the Planning Commission is responsible for making, so the defendant is without knowledge or information sufficient to form a belief as to the truth of that allegation.  It is denied as untrue the Planning Commission is a separate legal entity capable of being sued.**

ALLEGATION 9.          The Court has jurisdiction over this matter under the 1963 Michigan Constitution, Article VI, Section 13; MCL 600.751; and MCL 600.605.

**ANSWER 9.**          **The allegations contained in paragraph 9 are no longer relevant.**

ALLEGATION 10.      The scope of this action includes both state and federal claims, both of which this Court has jurisdiction to adjudicate.

**ANSWER 10.          It is admitted the Court has jurisdiction over the federal claims asserted and has discretion to exercise supplemental jurisdiction over the state law claims.**

ALLEGATION 11.      Venue is proper in this Court pursuant to MCL 600.1605 and MCL 600.1615.

**ANSWER 11.          The allegations contained in paragraph 11 are no longer relevant.**

## FACTS

**The Original Property, PUD Agreement, and Parking Arrangement**

ALLEGATION 12.      The property located at 8 and 10 East Bridge Street in downtown Rockford is currently comprised of two connected mixed-use commercial buildings (one of which is the Subject Property) and an adjacent parking lot (the "**Original Promenade Parcel**").

**ANSWER 12.          It is denied as untrue the property located at 8 and 10 East Bridge Street includes the adjacent parking lot. The remaining allegations contained in paragraph 12 are admitted.**

ALLEGATION 13.      In 1923, the City purchased the Original Promenade Parcel from Consumers Power and undertook construction of a new water facility in 1925 and 1926.

**ANSWER 13.          Admitted.**

ALLEGATION 14.      In 1976, the City started considering utilizing wells for its water source; and in 1999, the City replaced the water plant with wells located outside of downtown Rockford.

**ANSWER 14.          Admitted.**

ALLEGATION 15.      Having no further use for the Original Promenade Parcel, the City sold the Original Promenade Parcel to Promenade of Rockford, LLC ("**Promenade LLC**") in 2005.  The purchase agreement stated in part that the Original Promenade Parcel must be developed and used as specified in a development agreement between the City and

5

Promenade LLC.  (The City is in possession of the purchase agreement and development agreement.)

**ANSWER 15.**        **The defendant objects to the characterization that the City "had no further use" for the property and denies that characterization as untrue. It is admitted the City conveyed the property to Promenade of Rockford, LLC and that the conveyance included recorded deed restrictions on the use of the property. As part of the transaction the City and Promenade of Rockford, LLC entered into a Development Agreement based on the recorded deed restrictions.**

ALLEGATION 16.      On April 11, 2005, the City Council passed Resolution 05-13 to rezone the Original Promenade Parcel from C-2 (which is what the remainder of downtown was and remains zoned) to PUD and impose use restrictions through a development agreement executed on the same day ("**Promenade PUD**" and "**PUD Agreement**," respectively).

**ANSWER 16.**        **It is admitted the City incorporated use restrictions from the recorded deed restrictions and Development Agreement into a rezoning of the property from C-2 to Planned Unit Development (PUD) as part of the conveyance.**

ALLEGATION 17.      The Promenade PUD, through the PUD Agreement, narrowly restricted the use of the Subject Property's first floor to farm-to-fork "sit down" restaurants and specialty retailers as follows:

A.  The Project may include a "sit down" restaurant that uses a wait staff, serves the majority of its meals for sit-down, on premises consumption, serves alcoholic beverages by the glass pursuant to the liquor license acquired by the Owner for this project, and prepares most menu items on-site and from "scratch" using fresh ingredients.

B.  The Project may include within the first floor specialty retailers.  The retailers shall not be cut-rate or discount retailers.  Moreover, the occupants shall not include the sale of candles or incense as a primary item for sale, shall not be a tobacco store, shall not provide tattoos, body or ear piercing or similar services, shall not provide video rentals or sales, shall not sell obscene or pornographic materials or any materials displaying pictorially or in any other manner any male or female genitalia or female breasts, shall not sell sexual devices or aids, shall not be primarily in the business [of] showing, renting, loaning or selling videos or DVD's, shall not sell cold beer by the bottle, shall not sell liquor by the bottle (the sale of fine wines by the bottle is

acceptable), shall not play music or have other sound at a volume such that it can be heard outside the store, shall not have flushing, oscillating, or twinkling lights visible outside the store, shall not be a convenience store or general grocery store, shall not primarily sell lingerie, and shall not contain the following uses:  offices on the ground floor, dry cleaners, grocery store, pharmacy, banks, convenience store, beauty shop/spas, arcade, drive-in restaurant, rent to own, second hand stores, dollar stores, video rental, buffet style restaurants, adult book stores, taro card, medical, bead store, pet store, or fast food.

C.   The Project may within the first floor include specialty food retailers such as an upscale bakery, deli or coffee shop.  By the way of example, Subway, Blimpies, and similar sandwich shops are not retailers meeting this definition and shall not be permitted to occupy the Project.  No fast food restaurant meets this definition, including, without limitation, any Wendy's, Arby's, Burger King, McDonald's, Hardees or similar mass-marketed chains and they shall not be permitted to occupy the Project.  Dunkin Donuts and similar mass-marketed, limited focus bakery users shall not be permitted to occupy any part of the Project.  The first floor may also include an ATM subject to Planning Commission approval.

D.   The second Floor of the Project may include any use allowed within the first floor and professional offices including, but not limited to, physicians, dentists, attorneys, accountants, stock-brokers and insurance sales.  Banks, insurance claims offices, medical laboratories or phlebotomists, telephone sales firms and similar office uses shall not be permitted.

**ANSWER 17.**          **It is admitted paragraph 17 accurately quotes language from the original Development Agreement. It is denied as untrue the Development Agreement limited uses to "farm-to-fork" restaurants.**

ALLEGATION 18.      The stated goal of the PUD Agreement was "to assure that the Property and the Project are used and occupied by businesses that are 'destination' businesses drawing upscale shoppers to the City's downtown."

**ANSWER 18.          Admitted.**

ALLEGATION 19.      A "destination" business is commonly understood to be one that is marketed, branded, and advertised to attract customers to that location and does not depend on passing foot traffic or heavy population to attract customers.

**ANSWER 19.          The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19.**

ALLEGATION 20.      Within a year of the PUD Agreement being signed, Promenade LLC constructed two 2-story, mixed-use commercial buildings together with related parking, landscaping, and other site improvements.

**ANSWER 20.        It is admitted that in 2006 Promenade of Rockford, LLC constructed two 2-story buildings on the property that were subject to the terms and restrictions of the deed restrictions and Development Agreement.**

ALLEGATION 21.      The typical parking ratio for a suburban office, retail, and restaurant building like the Subject Property is approximately one parking spot for 200 to 300 square feet of building area.

**ANSWER 21.        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21.**

ALLEGATION 22.      When the Subject Property was built, the dedicated parking lot that was part of the Original Promenade Parcel was sized with a ratio of one parking spot to 290 square feet, within that typical suburban parking ratio.

**ANSWER 22.        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22.**

ALLEGATION 23.      As will become clear, the availability of an adequately-sized and dedicated parking lot played a critical role in allowing the destination businesses to initially succeed in the Original Promenade Parcel.

**ANSWER 23.        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23.**

**The Parcel Split and the City's Acquisition of the Parking Lot for Public Parking**

ALLEGATION 24.      In 2008, Promenade LLC ran into financial difficulties that forced a split of the two Original Promenade Parcel buildings and the parking lot.

**ANSWER 24.        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24.**

ALLEGATION 25.      On August 11, 2008, both buildings and parking lot were split into three separate parcels of land.

**ANSWER 25.          Admitted.**

ALLEGATION 26.      The parking lot was sold to the City by Promenade LLC.

**ANSWER 26.          The allegations contained in paragraph 26 are denied as untrue. In further answer the defendant states the parking lot was conveyed – not sold – to the City.**

ALLEGATION 27.      The 10 East Building Street parcel ("**Nature View Building**") was also sold and is now owned by Nature View Properties, LLC ("**Nature View**"), a Michigan limited liability company.

**ANSWER 27.          Admitted.**

ALLEGATION 28.      Promenade LLC retained only the Subject Property.

**ANSWER 28.          Admitted.**

ALLEGATION 29.      After purchasing the Promenade parking lot for public use, the City granted Nature View a right to purchase the parking lot in the event that the City (1) received a written offer to purchase the parking lot which the City intended on accepting or did accept, or (2) discontinued the use of the parking lot as a public parking lot.  This basically ensured that the owner of the Subject Property would most likely never be able to control its own parking situation.

**ANSWER 29.          It is denied as untrue the City purchased the parking lot. It is admitted that after the parking lot was conveyed to the City, the City granted Nature View a right to purchase the parking lot in the event that the City (1) received a written offer to purchase the parking lot which the City intended on accepting or did accept, or (2) discontinued the use of the parking lot as a public parking lot.  The defendant denies the allegation that the owner of the subject property "would most likely never be able to control its own parking situation," as untrue.**

**DJT Properties Purchases the Subject Property**

ALLEGATION 30.     In 2010, Dan Trierweiler heard that a bank had taken possession of the Subject Property from Promenade LLC and was foreclosing on the property.

**ANSWER 30.         The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.**

ALLEGATION 31.     Mr. Trierweiler has always been invested in the wellbeing of his hometown, Rockford.  For instance, in the late 1990s when the Original Promenade Parcel was still a water plant, he granted a $250,000 easement across his property, without compensation, so that the City could run a water line for Rockford's water system, and he invested the seed money that helped open a family YMCA in Rockford.

**ANSWER 31.         The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31.**

ALLEGATION 32.     As Mr. Trierweiler recently explained to the Planning Commission and City Council, "[w]hen the Promenade was in foreclosure, it struck me that such a beautiful building in our city, [should] not be owned by an out-of-town landlord.  It made sense to me that this was another investment that I could make that would help Rockford grow."

**ANSWER 32.         The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32.**

ALLEGATION 33.     Mr. Trierweiler, through DJT Properties, purchased the Subject Property on September 29, 2010.

**ANSWER 33.         Admitted.**

ALLEGATION 34.     Mr. Trierweiler knew there were use limitations on the Subject Property, but he had worked harmoniously with the previous Rockford city manager, Michael Young, in the past.

**ANSWER 34.         It is admitted Trierweiler – and by extension the plaintiff – knew there were restrictions on the use of the subject property in place when he purchased the property. The defendant objects to the allegation that Trierweiler had worked harmoniously with the previous Rockford city manager, Michael Young, in the**

past as irrelevant. In further answer, since the Complaint provides no factual basis for the conclusory assertion that Trierweiler had worked harmoniously with Michael Young in the past, the defendant is without knowledge or information sufficient to form a belief as to the truth of that allegation.

ALLEGATION 35.    Concurrently with the purchase, the City and DJT Properties executed an Amended and Restated Development Agreement to amend the PUD Agreement. As part of the purchase, the limited uses in the Promenade PUD were expanded slightly to include specialty grocery stores on the first floor.  (The City is in possession of the amended and restated development agreement.)

ANSWER 35.        Admitted.

ALLEGATION 36.    Though Promenade LLC suffered financial difficulties, Reds on the River ("**Reds**") was making do in the ground floor space in the Subject Property when Mr. Trierweiler purchased the Subject Property.

ANSWER 36.        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation that Promenade LLC suffered financial difficulties. To the extent the allegation that Reds on the River was "making do [sic]" means that Reds was operating successfully, the allegation is admitted.

ALLEGATION 37.    The lack of control over the now-public parking lot presented a challenge for challenge for Reds, but Mr. Trierweiler anticipated the building at 12 East Bridge Street ("**Rockford Brewing Company Building**"), across form the parking lot, would become an office building which would allow agreeable parking usage in the now-public parking lot.

ANSWER 37.        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37.

**Rockford Brewing Company Opens Its Doors in 2012, Further Cramping the Parking Lot**

ALLEGATION 38.      For the two years immediately after Mr. Trierweiler purchased the Subject Property, the now-public parking lot still served its purpose for the Promenade PUD, including the Subject Property.

**ANSWER 38.          Admitted.**

ALLEGATION 39.      But in December of 2012, the Rockford Brewing Company (the "**Brewery**") opened its doors across the parking lot from the Promenade building in the Rockford Brewing Company Building and rendered the parking situation intolerable.

**ANSWER 39.          It is admitted Rockford Brewing Company opened in 2012. The defendant does not understand the allegation that the parking situation was rendered "intolerable," and is therefore without knowledge or information sufficient to form a belief as to the truth of that allegation.**

ALLEGATION 40.      It is important to understand that the Promenade PUD parking lot was never contemplated to be a high-volume lot.

**ANSWER 40.          The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40.**

ALLEGATION 41.      The parking lot—with only 53 spaces—is shaped like a funnel with no outlet.  Patrons who venture to the back of the parking lot to find a likely nonexistent parking spot find themselves trapped in a narrow corridor with very limited ability to turn around.  See attached **Exhibit A** (P6 is the Promenade PUD parking lot).  This caused a frequent gridlock that frustrated patrons of *all* the surrounding businesses.

**ANSWER 41.          The defendant objects to paragraph 41 as it does not contain properly pled allegations of fact but contains improper subjective contentions and opinions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the improper contentions and opinions contained in paragraph 41.**

ALLEGATION 42.      The parking lot was designed for patrons to pull in, find a spot, park, and then re-orient their car to leave the parking lot when they leave the parking spot. There is no thoroughfare wide enough to support cars circling the lot when they cannot find a spot.

**ANSWER 42.** The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42.

ALLEGATION 43. Reds complained to Mr. Trierweiler that customers were unable to find parking in the adjacent parking lot due to the Brewery's customers using the spots. Reds was then forced to use valet parking to accommodate its diners. The valets had to take the cars, turn them around, and go park them in a different, further city lot on the other side of the White Pine Trail from the Promenade PUD (the "**South Squires Public Parking Lot**"). See attached **Exhibit A** (P7 is the South Squires Public Parking Lot).

**ANSWER 43.** The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43.

ALLEGATION 44. Working with the then City Manager Michael Young, Mr. Trierweiler attempted to remedy the parking issues by negotiating a one-way path for vehicle across the White Pine Trail. They devised a plan that would permit traffic to move into the South Squires Public Parking Lot across the trail to get back to Bridge Street via Squires Street or Towers Drive. See **Exhibit A**.

**ALLEGATION 44.** It is admitted Trierweiler contacted the State of Michigan to seek permission for vehicular traffic to cross White Pine Trail. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 44.

ALLEGATION 45. City Manager Young informed Mr. Trierweiler that one member of the Planning Commission, David Rasmussen, owned a business and/or commercial buildings at 30 and 36 East Bridge, very close to the South Squires Public Parking Lot to which the Promenade parking lot overflow would be connected. Mr. Young warned Mr. Trierweiler that Mr. Rasmussen would be opposed to the Promenade PUD's traffic crossing of the White Pine Trail and use of that parking lot, and that he had other commissioners who would support him no matter what.

**ANSWER 45.** The defendant objects to paragraph 45 as it is irrelevant. The State of Michigan denied the request to allow vehicular traffic to cross White Pine Trail; thus, the City of Rockford had no authority to permit vehicular traffic to cross the trail. The defendant is without knowledge or information sufficient to form a belief

as to the truth of the allegations contained in paragraph 45 regarding statements

allegedly made by Mr. Young.

ALLEGATION 46.      Mr. Rasmussen was one of the deciding votes in turning down the request to create a passage across the White Pine Trail to alleviate some of the Promenade PUD's parking burdens.

**ANSWER 46.          The allegations contained in paragraph 46 are denied as**

**untrue as the City of Rockford had no authority to grant the request to allow vehicular**

**traffic to cross White Pine Trail.**

ALLEGATION 47.      At that point, the City was essentially asking DJT Properties to make an impossible situation function.

**ANSWER 47.          The allegations contained in paragraph 47 are denied as**

**untrue.**

ALLEGATION 48.      Reds already had an established customer base when the parking situation became inadequate for patrons, but not even Reds was able to sustain the damage done in depriving it of a dedicated parking lot.

**ANSWER 48.          The allegations contained in paragraph 48 are denied as**

**untrue.**

ALLEGATION 49.      In 2016, Reds' lease with DJT properties expired, and the restaurant's owners decided to relocate to a location with dedicated parking.  In a public statement to MiBiz, the COO of the owner restaurant group said the restaurant was "limited by the current lease, parking area, and the constraints of the building."

**ANSWER 49.          It is admitted Reds relocated. The defendant is without**

**knowledge or information sufficient to form a belief as to the truth of the remaining**

**allegations contained in paragraph 49.**

ALLEGATION 50.      Mr. Trierweiler offered to reduce the rents and accommodate Reds so it would continue renting the entirety of the ground floor space in the Subject Property, but that still left the problem with the parking, which Mr. Trierweiler could not remedy.  Reds declined the offer.

**ANSWER 50.**        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50.

ALLEGATION 51.      Convenient parking is an essential part of an upscale shopping or dining experience.  In a survey of 6,000 drivers in the United States, a shocking 63% reported they would avoid driving to a destination due to the challenge of finding parking, "dramatically impacting local businesses and economic activity."

**ANSWER 51.**        The defendant objects to paragraph 51 as it does not contain properly pled allegations of fact but contains improper subjective contentions and opinions. The defendant is without knowledge or information sufficient to form a belief as to the truth of the improper contentions and opinions contained in paragraph 51.

ALLEGATION 52.      Far from the ratio of one parking space for every 200 to 300 square feet of building, the buildings surrounding the now-public parking lot in the Promenade PUD create a ratio of one parking space to approximately 720 square feet of building area.

**ANSWER 52.**        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52.

ALLEGATION 53.      A recent appraisal of the Subject Property (provided to the City's assessor) revealed that the lack of available on-site parking damaged the value of the Subject Property.

**ANSWER 53.**        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 53.

ALLEGATION 54.      With another restaurant now consuming parking spaces in the evenings, backups in the parking lot frustrating patrons, and no ability for DJT Properties to control the parking lot or create a new exit, the goal of using the Subject Property to attract upscale diners to downtown Rockford was thwarted.

**ANSWER 54.**        The allegations contained in paragraph 54 are denied as untrue.

**Another Prestigious Restaurant Tries to Use the Space and Quickly Fails**

ALLEGATION 55.      After an arduous search for a new tenant, the Ben Muller Realty Company ("**Muller Realty**") finally convinced the Essence Restaurant Group ("**Essence**") to come in and sign a 10-year lease.  Essence is an extremely successful restaurant group that has served the Grand Rapids Metro area with restaurants such as Bistro Bella Vita, Grove, and The Green Well.  The only condition was that Mr. Trierweiler make renovations to the space to better suit Essence's needs.

**ANSWER 55.        It is admitted the Essence Group became a tenant at the subject property. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 55.**

ALLEGATION 56.      Importantly, the space also needed to be downsized because Essence and Mr. Trierweiler, who has been operating restaurants since 1967, recognized that the space was too large for the amount of parking available at the dinner hour.

**ANSWER 56.         The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56.**

ALLEGATION 57.      Mr. Trierweiler obliged in the hope that this would become The Green Well's second successful location in the Grand Rapids area.

**ANSWER 57.        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 57.**

ALLEGATION 58.      He expended over $260,000 renovating the restaurant space. The space was split into a large restaurant space (the "**Green Well Space**") and two, smaller tenant spaces on either side of the restaurant space.  The space south of the restaurant (the "**Small Tenant Space**") is unoccupied, and the space north of the restaurant (the "**Flavors Space**") is occupied by Flavors on the Promenade, an ice cream shop.

**ANSWER 58.        It is admitted Flavors on the Promenade occupies space north of the restaurant space. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 58.**

ALLEGATION 59.      After The Green Well opened in April of 2017, Essence listened to the feedback from Rockford patrons and decided to pivot to a more family-friendly option.

The re-branded restaurant, the Rockford Riverside Grille, opened its doors in March of 2018. It was specifically designed for and targeted the downtown Rockford patrons.

**ANSWER 59.         It is admitted Rockford Riverside Grille replaced The Green Wall. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 59.**

ALLEGATION 60.     The Rockford Riverside Grill closed its doors in September 2018.

**ANSWER 60.          Admitted.**

ALLEGATION 61.     Essence attempted to transition and utilize the space for events and banquets, making the best of a beautiful, large space situated right on the Rogue River with an enchanting outdoor area.  But it did not meet the restrictive provisions of the Promenade PUD, and the City refused to be flexible, so Essence was blocked from utilizing the space as an event or banquet space.

**ANSWER 61.         It is denied as untrue the City "refused to be flexible" on the use of the space; no request was made to the City to allow the space to be used for events or banquets.**

ALLEGATION 62.     As a result, The Green Well Space has been vacant since it closed in 2018.

**ANSWER 62.         It is admitted the restaurant is vacant. It is denied as untrue the vacancy is the result of the City's alleged lack of flexibility as no request was made to the City to allow the space to be used for events or banquets.**

ALLEGATION 63.     The Small Tenant Space has remained vacant since it was created in 2016 to accommodate The Green Well's space needs.

**ANSWER 63.         The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 63.**

ALLEGATION 64.     The closing of the Rockford Riverside Grille, and inability to lease the Small Tenant Space, showed that the Promenade PUD was no longer viable.

**ANSWER 64.**         **The allegations contained in paragraph 64 are denied as**

**untrue.**

ALLEGATION 65.      The Green Well Space had been filled by *exactly* what the PUD Agreement envisioned, an upscale restaurant run by a prestigious restaurant group. This was the ultimate measure of how well the space would attract upscale patrons.  The restaurant even pivoted to try to meet the needs of Rockford residents.

**ANSWER 65.**         **The defendant is without knowledge or information**

**sufficient to form a belief as to the truth of the allegations contained in paragraph 65.**

ALLEGATION 66.      But ultimately, not even a restaurant curated to serve Rockford's downtown patrons could survive in the space.

**ANSWER 66.**         **The allegations contained in paragraph 66 are denied as**

**untrue.**

**The Property Sits Vacant, Despite Efforts of Two Prestigious Real Estate Firms**

ALLEGATION 67.      The two vacant spaces in the Subject Property now sit empty, despite being marketed by two large, well-respected real estate agencies:  Colliers International ("**Colliers**") and Muller Realty.

**ANSWER 67.**         **The defendant is without knowledge or information**

**sufficient to form a belief as to the truth of the allegations contained in paragraph 67.**

ALLEGATION 68.      Essence hired Colliers to re-let its space after the City refused to allow the Green Well Space to be used as a banquet hall.  Muller Realty has been the dedicated agent of the Subject Property since Mr. Trierweiler bought the Subject Property in 2010.

**ANSWER 68.**         **It is denied as untrue the City refused to allow the space to**

**be used as a banquet hall. The defendant is without knowledge or information**

**sufficient to form a belief as to the truth of the remaining allegations contained in**

**paragraph 68.**

ALLEGATION 69.      Now, Muller Realty is the only agent leasing the space, as Essence's lease with DJT Properties has been terminated pursuant to the terms of a settlement agreement.

**ANSWER 69.**        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69.

ALLEGATION 70.        Elliot Muller, one of the listing agents, explained that there has been a lot of interest in the space.  However, the Promenade PUD limitations prevent people from being able to lease either of the spaces.  The restrictions force tenants to look for other spaces in downtown Rockford.

**ANSWER 70.**        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Elliot Muller's subjective beliefs or statements. The substance of the statements and opinions attributed to Elliot Muller are denied as untrue.

ALLEGATION 71.        Efforts to lease the space to tenants that would fit the uses included not only listed the property as usual, but also posting signs in windows, posting sings(sic.) in yards, listing on LoopNet, and communicating directly with the West Michigan brokerage community.

**ANSWER 71.**        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71.

ALLEGATION 72.        Additionally, Muller Realty has directly marketed to 88 restaurants, 49 retailers, and 42 boutiques.  In 2020, Muller Realty showed the property 20 times.  That resulted in three offers to lease the space, none of which could be accepted by DJT Properties because the business did not fit the narrow use restrictions of the Promenade PUD.

**ANSWER 72.**        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 72.

**The Layout of the Property Impedes Its Use for Retail**

ALLEGATION 73.        The problem with leasing the property for the narrow set of uses allowed under the restrictive Promenade PUD is not just limited to the lack of adequate parking for upscale restaurant use but also the unsuitability of the building's location and orientation for the only other option made available under the Promenade PUD—specialty retail or specialty grocery.

19

**ANSWER 73.** **The allegations contained in paragraph 73 are denied as untrue.**

ALLEGATION 74.     Currently, the Subject Property has three suites on the first floor and 15 suites on the second floor.  On the first floor there is the approximately 1,338-square-foot Small Tenant Space that is currently vacant, the approximately 5,500-square-foot Green Well Space that used to house the restaurants, and the Flavors Space.  On the second floor, there are fifteen spaces:  ten executive offices and five larger office spaces.  Four of the spaces on the second floor are currently unoccupied.

**ANSWER 74.** **The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 74.**

ALLEGATION 75.     The suites on both floors boast views of the Rogue River and some of the Rockford Dam, and the Green Well Space was recently renovated, making the Subject Property an extremely desirable piece of real estate.

**ANSWER 75.** **It is admitted the property is an extremely desirable piece of real estate. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 75.**

ALLEGATION 76.     But despite the attractive qualities of the building, the Promenade PUD has clear and recognized shortcomings that inhibit the leasing of the Subject Property for retail.

**ANSWER 76.** **The defendant objects to paragraph 76 on the basis of relevance as the plaintiff was aware of the restrictions on the use of the property when it was purchased. In further answer, the defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 76.**

ALLEGATION 77.     In terms of location, the Promenade is detached from the heart of downtown, and lacks the cohesiveness and walkable character of the downtown Rockford shopping district.  The random development pattern and numerous curb cuts, including a gas station, on East Bridge Street make this location unconducive to window shopping.

**ANSWER 77.**        **The allegations contained in paragraph 77 are denied as**

**unture.**

ALLEGATION 78.    In terms of orientation, the Promenade building is a long rectangular shape, with a perpendicular orientation to Bridge Street.  Only a small portion of the building (the portion occupied Flavors) actually faces Bridge Street.  The Subject Property lacks the drive-by visibility sought after for retail use.

**ANSWER 78.**        **It is admitted that in terms of orientation, the Promenade**

**building is a long rectangular shape, with a perpendicular orientation to Bridge Street.**

**The remaining allegations contained in paragraph 78 are denied as untrue.**

ALLEGATION 79.    The front of the Rockford Brewing Company Building sits only 14 feet from the sidewalk; the Promenade building sits around 38 feet from the sidewalk, and thus, when viewed from much of the remainder of downtown by window shoppers or walkers, sits behind the Rockford Brewing Company Building, hidden from view.

**ANSWER 79.**        **It is admitted, upon information and belief, that the front of**

**the Rockford Brewing Company Building is approximately 14 feet from the sidewalk**

**and that the front of the Promenade building is approximately 38 feet from the**

**sidewalk. The remaining allegations contained in paragraph 79 are denied as untrue.**

**DJT Properties Seeks to Expand the Permitted Uses in the PUD Agreement**

ALLEGATION 80.    The Promenade PUD is the only PUD in downtown Rockford. Every property owner within downtown, except for those in the Promenade PUD (i.e., the Subject Property and the Nature View Property), has the right to use their property for a broad range of uses, including office, medical office, salon, and other personal services by right.  No land use approval processes are required.

**ANSWER 80.**        **It is admitted the only parcel zoned PUD in the downtown**

**district is the Promenade property. In further answer the defendant states that the**

**Amended and Restated Development Agreement is the only such agreement in place**

**on property in the downtown district. The remaining allegations contained in**

**paragraph 80 are denied as untrue.**

ALLEGATION 81.      The march of time has demonstrated that the type and nature of the uses listed in the Promenade PUD have failed to be successful.

**ANSWER 81.          The defendant does not understand the phrase "The march of time." However, it is denied as untrue that the restrictions contained in the recorded deed restrictions and the Amended and Restated Development Agreement will result in the lack of success of the uses allowed under the deed restrictions and Amended and Restated Development Agreement.**

ALLEGATION 82.      Because the current permitted uses in the Promenade were not functioning for the Subject Property, DJT Properties attempted to work with the City by applying for rezoning to permit additional uses.

**ANSWER 82.          The allegations contained in paragraph 82 are denied as untrue.**

ALLEGATION 83.      The expanded uses would have still permitted the City to exercise significant regulatory control over the Subject property while giving DJT Properties the flexibility to actually fill the spaces.

**ANSWER 83.          The allegations contained in paragraph 83 are denied as untrue.**

ALLEGATION 84.      Nature View supported the approval of DJT Property's application due to Dan Trierweiler's dedication to the Rockford community.

**ANSWER 84.          Admitted.**

ALLEGATION 85.      DJT Properties hired Suzanne Schulz of Progress AE to assist with compiling the application.

**ANSWER 85.          Admitted.**

ALLEGATION 86.      Ms. Schulz served as Grand Rapids' Managing Director of Design and Development and Director of Planning for nearly 20 years.  She specializes in urban planning, transportation planning, and policy development.

**ANSWER 86.          Admitted.**

ALLEGATION 87.    With her assistance, DJT Properties prepared an application for extended uses that would maintain the continuity and charm of Rockford's downtown area while still permitting economic viability in the Promenade.

**ANSWER 87.        It is admitted that plaintiff prepared an application to revise and expand the uses allowed in the recorded deed restrictions and the Amended and Restated Development Agreement. The implication that the property is not economically viable is denied as untrue.**

ALLEGATION 88.    Recognizing the City's attachment to the original PUD Agreement, DJT Properties agreed to retain the original use restrictions on the Flavors Space, in order to "insure that the continuity of the desired retail and restaurant uses originally envisioned for the site are preserved and that an active street edge is maintained."

**ANSWER 88.        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 88.**

ALLEGATION 89.    The uses requested by DJT Properties in its application ("**Expanded Permitted Uses**") were:

A. National "fast casual" restaurants (e.g., Panera) in the Green Wall Space and the Small Tenant Space;

B. Specialty food retailer that may sell beer and spirits (in addition to wine) subject to Special Land Use ("**SLU**") approval, in the Green Well Space and the Small Tenant Space;

C. General retail uses, excluding dollar stores, in the Green Well Space and the Small Tenant Space;

D. Art gallery and assembly/collaborative space, subject to SLU approval, in the Green Well Space and the Small Tenant Space;

E. Business office-service uses such as real estate, financial serices and brokerage in the Green Well Space and the Small Tenant Space; and

F. Residential on the second floor.

**ANSWER 89.        Admitted.**

ALLEGATION 90.    On November 21, 2019, Ms. Schulz gave a carefully planned presentation to the Planning Commission.

**ANSWER 90.**          **It is admitted Ms. Schulz gave a presentation to the Planning Commission on November 21, 2019. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation that the presentation was carefully planned.**

ALLEGATION 91.     After Ms. Schultz presenting her thoughts on the best uses for the Promenade, Commissioner Lisa Chamberlain asked her, "*what gives you the right to come here from the big city and tell us small town people how to run our business*?"

**ANSWER 91.          The allegations contained in paragraph 91 ae denied as untrue.**

ALLEGATION 92.     A major point of contention with the Planning Commission was office space on the first floor.

**ANSWER 92.          Admitted.**

ALLEGATION 93.     The Master Plan of Rockford States the following vision for the central business district of Rockford:

> With respect to land uses, downtown is envisioned to be a retail center.  Some office uses may be appropriate but can have a negative impact by taking prime, street-level, retail space in highly visible locations.  It is strongly recommended that efforts be made to retain street-level space for retail and similar uses, while encouraging the use of upper stories of downtown buildings as either residential or office.  This may require the modification of some existing codes to permit the needed renovations to occur in a cost effective manner.

**ANSWER 93.          The defendant objects to paragraph 93 on the basis of relevance as the Master Plan has no application to the subject property due to the existence of the recorded deed restrictions and the Amended and Restated Development Agreement. Without waiving this objection, the defendant admits paragraph 93 accurately quotes from a portion of the Master Plan.**

ALLEGATION 94.    The current Master Plan of Rockford clearly permits some office use in downtown, and the Promenade is actually the best place to permit office space because the Master Plan is concerned with office space taking "highly visible" locations from retail, and as described above only the Flavors Space is "highly visible."

**ANSWER 94.    The defendant objects to paragraph 93 on the basis of relevance as the Master Plan has no application to the subject property due to the existence of the recorded deed restrictions and the Amended and Restated Development Agreement. Without waiving this objection, the allegations contained in paragraph 94 are denied as untrue.**

ALLEGATION 95.    In fact, office use is permitted as of right in the entirety of downtown in areas that are exceedingly more visible than the Promenade.

**ANSWER 95.    It is admitted that office use is permitted as a matter of right in property in the C-2 zoning district.**

ALLEGATION 96.    The City employed Paul LeBlanc of PLB Planning Group, a Michigan limited liability company in Ada, Michigan, to be the consulting planner in considering DJT Properties' request for the Extended Permitted Uses.

**ANSWER 96.    Admitted.**

ALLEGATION 97.    Mr. LeBlanc prepared a memorandum for the City Planning Commission in which he explained that the Promenade, despite being a beautiful building, suffers from the location and orientation issues described, which inhibit easy retail use.

**ANSWER 97.    It is admitted Mr. LeBlanc prepared a memorandum. The defendant is without knowledge or information sufficient to form a belief as to the truth of the plaintiff's characterizations of Mr. LeBlanc's memo.**

ALLEGATION 98.    Of the three uses permitted on the first floor under the PUD Agreement, two of them are retail shops.

**ANSWER 98.    Admitted.**

ALLEGATION 99.    The City's consultant also stated to the Rockford Planning Commission on August 27, 2020, that the lack of visibility "rules out retail" in the empty spaces in the Subject Property.

**ANSWER 99.        The defendant is without knowledge or information sufficient to form a belief as to the truth of the plaintiff's characterizations of Mr. LeBlanc's memo.**

ALLEGATION 100.     He goes on to say that even if the space was able to attract retail, "it won't last for long."

**ANSWER 100.        The defendant is without knowledge or information sufficient to form a belief as to the truth of the plaintiff's characterizations of Mr. LeBlanc's memo.**

ALLEGATION 101.     It is undisputed that the Promenade is detached from the central business district of Rockford and is obscured from view due to its layout.

**ANSWER 101.        The allegations contained in paragraph 101 are denied as untrue.**

ALLEGATION 102.     As the City's own consultant, Mr. LeBlanc, stated:

> Despite its physical presence within downtown, the Promenade suffers from being disconnected from the heart of downtown activity (stores, foot traffic, riverfront park, etc.) and a suburban style strip center design orientated perpendicular to the adjacent street.  It is the perpendicular orientation of the building, in particular, that inhibits its suitability for many uses. Retail needs visibility in order to draw customers in, or there needs to be a strong attraction to lure customers to cross Bridge Street or motivate them to drive to a particular business.

**ANSWER 102.        The defendant admits paragraph 102 accurately quotes a portion of Mr. LeBlanc's memo.**

ALLEGATION 103.     Mr. LeBlanc, as the City's planning consultant, recommended ground floor uses that included an art gallery or similar exhibit space, hair and nail salons, and medical offices.  Ms. Schulz agreed with Mr. LeBlanc on everything he recommended.

**ANSWER 103.        The allegations contained in paragraph 103 are denied as untrue. Mr. LeBlanc explicitly stated he was not making any recommendations.**

26

ALLEGATION 104.    Despite the recommendations, the leasing history, and the continuing vacancy of the Subject Property, the Planning Commission only allowed two new uses:  (1) specialty food retailers (which were previously only allowed to sell wine) were now also permitted to sell beer and spirits *if* the City granted special land use approval, and (2) DJT properties could now lease the second floor for residential use.  The Planning Commission did not allow any of the other first floor uses.

**ANSWER 104.    It is denied as untrue that Mr. LeBlanc made any recommendations. It is further denied as untrue the Planning Commission made any decision, as it had no authority to do so. It is admitted the Planning Commission recommended to the City Council that the recorded deed restrictions and the Amended and Restated Development Agreement be revised to allow two new uses: (1) specialty food retailers if the City granted special land use approval, and (2) residential use on the second floor.**

**The Planning Commission Allows Rasmussen to Participate Despite His Conflict of Interest**

ALLEGATION 105.    In addition to demonstrating unwillingness to heed the advice of the retained city planner consultants, the City Planning Commission failed to give DJT Properties' PUD Application fair consideration.

**ANSWER 105.        The allegations contained in paragraph 105 are denied as untrue.**

ALLEGATION 106.    Dave Rasmussen, the same city commissioner who was involved with denying Mr. Trierweiler's application for the easement over the White Pine Trial, was very involved in the consideration of the PUD Application.

**ANSWER 106.        It is denied as untrue the Planning Commission denied an application for an easement over White Pine Trail. The State of Michigan denied the request to allow vehicular travel across White Pine Trail. It is admitted that Mr. Rasmussen participated in the Planning Commission's consideration of plaintiff's**

request to revise the recorded deed restrictions and the Amended and Restated

Development Agreement as a member of the Planning Commission.

ALLEGATION 107.    Not only does Mr. Rasmussen own commercial buildings at 30 and 36 East Bridge Street with tenants who use the public parking lots in the vicinity of their customers, but also Mr. Rasmussen's wife is one of those business tenants and would likely be directly affected by the competition for parking.

**ANSWER 107.        It is admitted Mr. Rasmussen owns commercial buildings on East Bridge Street. The remaining allegations contained in paragraph 107 are denied as untrue.**

ALLEGATION 108.    Commissioner Jim Scales, on the other hand, recused himself from considering this application due to his representation of Trendwell, which is the main tenant of Nature View.

**ANSWER 108.        It is admitted that Mr. Scales recused himself because he is legal counsel for Trendwell.**

ALLEGATION 109.    This should have been Mr. Rasmussen's cue to recuse himself as well.

**ANSWER 109.        The allegations contained in paragraph 109 are denied as untrue. It Is further denied as untrue that Mr. Rasmussen had a conflict of interest or had any reason to disqualify himself.**

ALLEGATION 110.    But Mr. Rasmussen opted instead to be an extremely vocal and involved in the consideration process, openly opposing the first-floor-office-space use for the Promenade because of parking.

**ANSWER 110.        It is admitted that Mr. Rasmussen ultimately voted to recommend less than all of the revisions to the recorded deed restrictions and the Amended and Restated Development Agreement sought by plaintiff to the City Council, as did all other voting members of the Planning Commission. The remaining allegations contained in paragraph 110 are denied as untrue.**

ALLEGATION 111.    At a Planning Commission subcommittee meeting on December 10, 2019, in the presence of City Manager Thad Beard, Mr. Rasmussen asked Mr. Trierweiler how many employees he envisioned working in the Promenade if it was approved for office space use.

**ANSWER 111.        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 111.**

ALLEGATION 112.    Mr. Trierweiler estimated the number of employees to be a couple dozen.  Mr. Rasmussen then asked Mr. Trierweiler where those employees would park, and Mr. Trierweiler responded across the South Squires Public Parking Lot due to restricted parking at the Promenade.

**ANSWER 112.        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 112.**

ALLEGATION 113.    Mr. Rasmussen explained that the city lot to which Mr. Trierweiler was referring was the parking lot for *his* customers.  Mr. Rasmussen concluded that he would be unable to support the office request due to the potential for shared parking.

**ANSWER 113.        The allegations contained in paragraph 113 are denied as untrue.**

ALLEGATION 114.    City Manager Thad Beard was sitting across the table from Mr. Rasmussen when he made these statements but never offered any comment on this reasoning.

**ANSWER 114.        Since it is denied as untrue that Mr. Rasmussen made the statements attributed to him, the allegations contained in paragraph 114 are denied as untrue.**

ALLEGATION 115.    It is objectively clear that Mr. Rasmussen would be affected by expanding the uses of the PUD Agreement, as it may detract tenants from the buildings he owns.

**ANSWER 115.        The allegations contained in paragraph 115 are denied as untrue.**

ALLEGATION 116.    For this reason, Mr. Rasmussen should have recused himself from any and all involvement with the PUD Application.

**ANSWER 116.** **The allegations contained in paragraph 116 are denied as untrue.**

ALLEGATION 117.   It is also clear that other commissioners on the Planning Commission and the City Council were unwilling to check this conflict of interest as Mr. Rasmussen actively participated in all Planning Commission and City Council discussions of DJT Properties' PUD Application.

**ANSWER 117.** **Since there was no conflict of interest, the allegations contained in paragraph 117 are denied as untrue.**

**The Planning Commission and City Council Grant Rezoning that Effectively Prohibits the Bulk of the Expanded Permitted Uses Requested in the Application, without Giving Any Official Reason for the Restrictions**

ALLEGATION 118.   The Planning Commission members engaged in no discussion about whether the Expanded Permitted Uses met the Zoning Ordinance standards for PUD rezoning.

**ANSWER 118.** **The allegations contained in paragraph 118 are denied as untrue. In further answer, the defendant states that the PUD standards in the Zoning Ordinance are irrelevant to the plaintiff's application to revise the recorded deed restrictions and the Revised and Restated Development Agreement as the Zoning Ordinance did not apply to the subject property in the same manner it would apply to property that was not subject to those restrictions and development agreement.**

ALLEGATION 119.   Instead, their discussion centered on how they could maintain control of which specific tenants were allowed to use the property.

**ANSWER 119.** **Since the plaintiff does not define what is meant by the discussion being "centered" on maintaining control of specific tenants, the defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 119.**

ALLEGATION 120.    Several Planning Commission members revealed their desire to vet each and every proposed lessee.

**ANSWER 120.**        **The allegations contained in paragraph 120 are denied as**

**untrue.**

ALLEGATION 121.    The Planning Commission's discussion also revealed a preference among some Planning Commission members that the space serve as a restaurant and that the space remain vacant until such a tenant could be found; they were concerned that approving business or medical office use would, as a practical matter, foreclose their dream that the space reopen as a restaurant.

**ANSWER 121.**        **The defendant objects to the use of the term "dream" and**

**denies as untrue that phrase was used. It is admitted there was a preference expressed**

**to leave the recorded deed restrictions in place.**

ALLEGATION 122.    At no point, however, did the Planning Commission evaluate whether the Expanded Permitted Uses met the standards for PUDs in the Zoning Ordinance or explain why they proposed rezoning that prohibited the bulk of the Expanded Permitted Uses.

**ANSWER 122.**        **The allegations contained in paragraph 122 are denied as**

**untrue. In further answer, the defendant states that the PUD standards in the Zoning**

**Ordinance are irrelevant to the plaintiff's application to revise the recorded deed**

**restrictions and the Amended and Restated Development Agreement as the Zoning**

**Ordinance did not apply to the subject property in the same manner it would apply to**

**property that was not subject to those restrictions and development agreement.**

ALLEGATION 123.    Once the Planning Commission made its decision on the PUD Application, it sent its proposed resolution for rezoning to the City Council for approval.

**ANSWER 123.**        **It is denied as untrue the Planning Commission made a**

**decision on the plaintiff's request to revise the recorded deed restrictions and the**

**Amended and Restated Development Agreement; the Planning Commission made a**

**recommendation to the City Council. It is admitted the Planning Commission**

31

**recommended to the City Council that the recorded deed restrictions and the Amended and Restated Development Agreement be revised to include two additional uses.**

ALLEGATION 124.   The City Council followed the Planning Commission's recommendations and approved the rezoning that prohibited the bulk of the Expanded Permitted Uses, again, without any official explanation or reasons for the prohibitions on those Expanded Permitted Uses under the applicable standards in the Zoning Ordinance.

**ANSWER 124.        The allegations contained in paragraph 124 are denied as untrue. In further answer, the defendant states that the PUD standards in the Zoning Ordinance are irrelevant to the plaintiff's application to revise the recorded deed restrictions and the Amended and Restated Development Agreement as the Zoning Ordinance did not apply to the subject property in the same manner it would apply to property that was not subject to those restrictions and development agreement. In further answer the defendant admits that the City Council voted to add two uses to the recorded deed restrictions and the Amended and Restated Development Agreement.**

ALLEGATION 125.   City Council Resolution 20-34 ("**Resolution**") stated that the Additional Permitted Uses conform with the Rockford Zoning Ordinance, but gave no explanation as to why the rezoning did not also permit the Expanded Permitted Uses.

**ANSWER 125.        It is admitted Resolution 20-34 stated the Additional Permitted Uses conform with the Zoning Ordinance. The remaining allegations contained in paragraph 125 are denied as untrue.**

**The City Charted DJT Properties Nearly $11,000 for Legal Advice to Interpret Its Own Zoning Ordinance and Consultant Report It Rejected**

ALLEGATION 126.   After approving rezoning for the Subject Property that still largely prohibits the Expanded Permitted Uses DJT Properties had requested, the City sent DJT properties bills for its legal fees and planning-consultant fees.

**ANSWER 126.** **It is admitted the City sent plaintiff invoices for its legal fees and consultant fees.**

ALLEGATION 127.   The legal fees amounted to $10,896.50 and the planning-consultant fees amounted to $2,700.

**ANSWER 127.** **Admitted.**

ALLEGATION 128.   The fees are largely unrelated to actually reviewing and considering DJT Properties' proposal under existing law.

**ANSWER 128.** **The allegations contained in paragraph 128 are denied as untrue.**

ALLEGATION 129.   DJT Properties was charged for the work of legal counsel in addressing issues such as preparing the City Council's Resolution and advising the City Manager on how to run meetings.

**ANSWER 129.** **It is admitted the legal bills included preparation of the City Council Resolution. The remaining allegations contained in paragraph 129 are denied as untrue.**

ALLEGATION 130.   The planning consultant's fees were for the preparation of a memo that, based on applicable law, recommended that the Planning Commission approve a number of DJT Properties' proposed Expanded Permitted Uses.

**ANSWER 130.** **Since Mr. LeBlanc's memo did not make any recommendations, the allegations contained in paragraph 130 are denied as untrue.**

ALLEGATION 131.   However, the Planning Commission declined to follow those recommendations on no basis other than their own unsupported, subjective preferences divorced from the applicable standards in the Zoning Ordinance.

**ANSWER 131.** **Since Mr. LeBlanc's memo did not make any recommendations, the allegations contained in paragraph 131 are denied as untrue.**

ALLEGATION 132.   DJT Properties paid the fees under protest and with the full reservation of rights to seek repayment.

**ANSWER 132.** **Admitted.**

## COUNT I
## VIOLATION OF THE ROCKFORD ZONING ORDINANCE
## (WRIT OF MANDAMUS)

ALLEGATION 133.    DJT Properties incorporates and realleges the proceeding paragraphs as if fully restated herein.

**ANSWER 133.        The defendant incorporates by reference paragraphs 1 through 132 of its Answer.**

ALLEGATION 134.    The City of Rockford Zoning Ordinance, Section 13.11, identifies specific criteria for approval of a planned unit development and states that the PUD "shall" be approved if those criteria are met.

**ANSWER 134.        Since Section 13.11 does not apply to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement as the Zoning Ordinance did not apply to the subject property in the same manner it would apply to property that was not subject to those restrictions and development agreement, the allegations contained in paragraph 134 are denied as untrue.**

ALLEGATION 135.    The Planning Commission, in making its recommendation, was required to review the PUD request "based on the conformance with the standards of Section 13.11" and make a recommendation to the City Council.

**ANSWER 135.        Since Section 13.11 does not apply to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement as the Zoning Ordinance did not apply to the subject property in the same manner it would apply to property that was not subject to those restrictions and development agreement, the allegations contained in paragraph 135 are denied as untrue.**

ALLEGATION 136.    The Planning Commission's recommendation to the Council shall include "the reasons for such recommendation, specifically citing appropriate

standards and sections of the [Zoning] Ordinance and identifying those specific conditions, if any, it considers necessary."  Zoning Ordinance § 13.7.

**ANSWER 136.**         **Since Section 13.7 does not apply to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement as the Zoning Ordinance did not apply to the subject property in the same manner it would apply to property that was not subject to those restrictions and development agreement, the allegations contained in paragraph 136 are denied as untrue.**

ALLEGATION 137.   The City Council, in reviewing the recommendation of the Planning Commission, "shall make its findings based on the standards of Section 13.11."

**ANSWER 137.**         **Since Section 13.11 does not apply to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement as the Zoning Ordinance did not apply to the subject property in the same manner it would apply to property that was not subject to those restrictions and development agreement, the allegations contained in paragraph 137 are denied as untrue.**

ALLEGATION 138.   The PUD Application is processed as an original PUD request under the Zoning Ordinance because it is a major change to the existing zoning of the Property.  Zoning Ordinance § 13.13.

**ANSWER 138.**         **Since Section 13.13 does not apply to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement as the Zoning Ordinance did not apply to the subject property in the same manner it would apply to property that was not subject to those restrictions and development agreement, the allegations contained in paragraph 138 are denied as untrue.**

ALLEGATION 139.    Since it must be reviewed as an original PUD rezoning request, the Planning Commission and City Council were required to review the PUD Application based on the standards set out in the City's Zoning Ordinance and make findings on each criterion in Zoning Ordinance § 13.11.

**ANSWER 139.        Since Section 13.11 does not apply to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement as the Zoning Ordinance did not apply to the subject property in the same manner it would apply to property that was not subject to those restrictions and development agreement, the allegations contained in paragraph 139 are denied as untrue.**

ALLEGATION 140.    The Planning Commission and the City Council did not evaluate DJT Properties' request under the mandatory standards in the Zoning Ordinance and failed to make any findings as to how the PUD Application did or did not comply with the standards set out in the Zoning Ordinance.

**ANSWER 140.        The allegations contained in paragraph 140 are denied as untrue. In further answer, the Chapter 13 of the Zoning Ordinance does not apply to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement in the same manner it would apply to property that was not subject to those restrictions and development agreement.**

ALLEGATION 141.    A writ of mandamus is appropriate when (1) the plaintiff has a clear legal right to the performance of the specific act sought to be compelled, (2) the defendant has a clear legal duty to act in the manner requested, and (3) the act to be compelled is ministerial.

**ANSWER 141.        The allegations contained in paragraph 141 are denied as untrue.**

ALLEGATION 142.    Under the Zoning Ordinance, the Planning Commission and the City Council had a clear legal duty to apply the standards for approval of a PUD to the PUD Application and to make findings of fact based on those standards.

**ANSWER 142.** **The allegations contained in paragraph 142 are denied as untrue.**

ALLEGATION 143.    DJT Properties has a clear legal right to performance of that duty under the Zoning Ordinance.

**ANSWER 143.** **The allegations contained in paragraph 143 are denied as untrue.**

ALLEGATION 144.    The Planning Commission and City Council's obligation to use the standards in Zoning Ordinance § 13.11 to determine whether to approve or deny DJT Properties' PUD Application and to make findings of fact based on those standards is not discretionary.

**ANSWER 144.** **Since Section 13.11 does not apply to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement as the Zoning Ordinance did not apply to the subject property in the same manner it would apply to property that was not subject to those restrictions and development agreement the allegations contained in paragraph 144 are denied as untrue.**

ALLEGATION 145.    The Court should declare that the Planning Commission and City Council have violated the Zoning Ordinance by failing to apply the standards in Zoning Ordinance § 13.11 to the PUD Application and failing to make findings of fact on each criterion as to each Expanded Permitted Use prohibited in the Resolution.

**ANSWER 145.** **Since Section 13.11 does not apply to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement as the Zoning Ordinance did not apply to the subject property in the same manner it would apply to property that was not subject to those restrictions and development agreement, the allegations contained in paragraph 145 are denied as untrue.**

ALLEGATION 146.    The Court should also enter an order of mandamus compelling the Planning Commission and City Council to apply the standards for PUD approval in Zoning Ordinance § 13.11 to each Expanded Permitted Use requested in DJT Properties' PUD Application that was not allowed in the PUD Decision, and to make findings of fact on each criterion with respect to those specific Expanded Permitted Uses.  The Court should also grant DJT Properties the further relief requested below.

**ANSWER 146.        Since Section 13.11 does not apply to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement as the Zoning Ordinance did not apply to the subject property in the same manner it would apply to property that was not subject to those restrictions and development agreement, the allegations contained in paragraph 146 are denied as untrue.**

## COUNT II
## VIOLATION OF THE MICHIGAN ZONING ENABLING ACT

ALLEGATION 147.    DJT Properties incorporates and realleges the preceding paragraphs as if fully restated herein.

**ANSWER 147.        The defendant incorporates by reference paragraphs 1 through 146 of its Answer.**

ALLEGATION 148.    Michigan law authorizes local units of government to establish and maintain a planned unit development district only in accordance with the terms of the Michigan Zoning Enabling Act, MCL 125.3101, *et seq.* ("**MZEA**").

**ANSWER 148.        Paragraph 148 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 148.**

ALLEGATION 149.    Under the MZEA, local units of government in general must always "insure that the land use or activity authorized shall be compatible with adjacent uses

of land, the natural environment, and the capacities of public services and facilities affected by the land use."

ANSWER 149.        Paragraph 149 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 149.

ALLEGATION 150.    However, when it comes to zoning planning unit developments, MZEA § 503 only authorizes the legislative body to establish planning unit development zoning requirements that "permit flexibility in the regulation of land development, encourage innovation in land use and variety in design, layout, and type of structures constructed, achieve economy and efficiency in the use of land . . . encourage useful open space, and provide better housing, employment, and shopping opportunities particularly suited to the needs of the residents of this state."

ANSWER 150.        Paragraph 150 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 150.

ALLEGATION 151.    MZEA § 503 further requires that, "[w]ithin a land development project designated as a planned unit development, regulations relating to the use of land, including, but not limited to, permitted uses, lots sizes, setbacks, height limits, required facilities, buffers, open space areas, and land use density, shall be determined in accordance with the planned unit development regulations specified in the zoning ordinance."

ANSWER 151.        Paragraph 151 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 151.

ALLEGATION 152.   A zoning ordinance that does not comply with these requirements is not valid because it is not authorized by the MZEA.

**ANSWER 152.        Paragraph 152 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant denies the legal contentions contained in paragraph 152 as untrue.**

ALLEGATION 153.   The Zoning Ordinance adopts the Legislature's intent for PUDs described in MZEA § 503, stating:

> It is the intent of this District to provide for flexibility in the regulation of land development; to encourage innovation in land use and variety in design, layout, and type of structures; to achieve economy and efficiency in the use of land, natural resources, energy, and the provision of public services and utilities; to encourage useful open space; and to create better living, working, and shopping environments.   In order to accomplish these objectives, this Chapter permits the relaxation of the conventional requirements found in other Zoning Districts.

**ANSWER 153.        Paragraph 153 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant denies as untrue that the Zoning Ordinance applies to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement in the same manner it would apply to property that was not subject to those restrictions and development agreement.**

ALLEGATION 154.   The Zoning Ordinance provides that "[a]ny use permitted by right or special approval in any District may be permitted within a PUD."

**ANSWER 154.        Paragraph 154 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To**

the extent a response is required, the defendant denies as untrue that the Zoning Ordinance applies to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement in the same manner it would apply to property that was not subject to those restrictions and development agreement.

ALLEGATION 155.   The Zoning Ordinance includes qualifying conditions for consideration in the PUD District, such as lot size, utility service, open space, and consistency with the City's General Development Plan.

**ANSWER 155.**      **Paragraph 155 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant denies as untrue that the Zoning Ordinance applies to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement in the same manner it would apply to property that was not subject to those restrictions and development agreement.**

ALLEGATION 156.   The Zoning Ordinance also provides that the PUD "shall be approved" if it complies with specific standards, including satisfying the qualifying conditions, that the uses are consistent with the City's Master Plan, that the PUD is compatible with surrounding uses of land, that it will not be injurious to public health, welfare, and safety, and that it is consistent with the spirit and intent of the PUD District.

**ANSWER 156.**      **Paragraph 156 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant denies as untrue that the Zoning Ordinance applies to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement in the same manner it would**

apply to property that was not subject to those restrictions and development agreement.

ALLEGATION 157.   The Zoning Ordinance establishes that the procedures and standards for approving a major change to the PUD are the same procedures and standards that govern an initial PUD request.

**ANSWER 157.        Paragraph 157 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant denies as untrue that the Zoning Ordinance applies to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement in the same manner it would apply to property that was not subject to those restrictions and development agreement.**

ALLEGATION 158.   The amendment to the Promenade PUD requested by DJT Properties was considered to be a major change by the City of Rockford.

**ANSWER 158.        The allegations contained in paragraph 158 are denied as untrue.**

ALLEGATION 159.   The expanded uses are permitted as of right in all of the remainder of downtown Rockford and satisfy every other lawful standard for approval in the zoning Ordinance PUD provisions.

**ANSWER 159.        The allegations contained in paragraph 159 are denied as untrue.**

ALLEGATION 160.   The City's prohibition of the Expanded Permitted Uses requested by DJT Properties and its enforcement of the Promenade PUD do anything but permit flexibility and encourage innovation, and are a violation of the above-noted provisions of the MZEA.

**ANSWER 160.        The allegations contained in paragraph 160 are denied as untrue.**

ALLEGATION 161.    The Court should declare the Zoning Ordinance's requirement to enter into a PUD agreement unlawful and invalid, enjoin enforcement of the Promenade PUD and the PUD Agreement on the Subject Property to the extent that they prohibit the Expanded Permitted Uses, and grant DJT Properties the further relief requested below.

**ANSWER 161.        The allegations contained in paragraph 161 are denied as untrue.**

<u>**COUNT III**</u>
<u>**VOID AND UNENFORCEABLE PUD AGREEMENT**</u>

ALLEGATION 162.    DJT Properties incorporates and realleges the preceding paragraphs as if fully restated herein.

**ANSWER 162.        The defendant incorporates by reference paragraphs 1 through 161 of its Answer.**

ALLEGATION 163.    Contracts founded on acts prohibited by a statute, or contracts in violation of public policy, are void.

**ANSWER 163.        Paragraph 163 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 163.**

ALLEGATION 164.    A local government only has those powers delegated to it by the Michigan constitution and the Legislature.

**ANSWER 164.        Admitted.**

ALLEGATION 165.    Local units of government have no powers to zone or impose conditions on land use other than those authorized by the MZEA, and any land use regulation that is not in compliance with the MZEA is unlawful and contrary to public policy.

**ANSWER 165.        The allegations contained in paragraph 165 are denied as untrue.**

ALLEGATION 166.    While the MZEA permits a property owner to "voluntarily offer in writing . . . certain use[s] and development of the land as a condition to a rezoning," it expressly states that "a local unit of government shall not require a landowner to offer conditions as a requirement for rezoning."  MCL 125.3405(5).

**ANSWER 166.        Paragraph 166 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 166.**

ALLEGATION 167.    Zoning Ordinance § 13.12 unlawfully requires a PUD applicant to enter into a PUD development agreement.

**ANSWER 167.        The allegations contained in paragraph 167 are denied as untrue.**

ALLEGATION 168.    Because it is not authorized by the MZEA, Zoning Ordinance § 13.12 is not a valid exercise of the City's zoning authority or a valid condition of PUD zoning.

**ANSWER 168.        Paragraph 168 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 168.**

ALLEGATION 169.    The City of Rockford has nevertheless unlawfully enforced that requirement and the existing PUD Agreement against DJT Properties to circumvent its mandatory obligation to apply the Zoning Ordinance standards to a major change to a PUD.

**ANSWER 169.        The allegations contained in paragraph 169 are denied as untrue.**

ALLEGATION 170.    Because the PUD Agreement coerced by the City is against public policy, it is in violation of the MZEA, void ab initio, and unenforceable.

**ANSWER 170.** **The allegations contained in paragraph 170 are denied as**

**untrue.**

ALLEGATION 171.    The Court should declare that Zoning Ordinance § 13.12 is unlawful and unenforceable, declare that the PUD Agreement is void and unenforceable, enjoin the enforcement of Zoning Ordinance § 13.12 and the PUD Agreement, and grant DJT Properties the further relief requested below.

**ANSWER 171.** **The allegations contained in paragraph 171 are denied as**

**untrue.**

<div align="center">

**COUNT IV**
**UNENFORCEABLE RESTRICTIVE COVENANT**

</div>

ALLEGATION 172.    DJT Properties realleges and incorporates the preceding paragraphs as if fully stated herein.

**ANSWER 172.** **The defendant incorporates by reference paragraphs 1**

**through 171 of its Answer.**

ALLEGATION 173.    The PUD Agreement is not a restrictive covenant but rather a development agreement entered pursuant to a Zoning Ordinance requirement for PUD zoning.

**ANSWER 173.** **The allegations contained in paragraph 173 are denied as**

**untrue.**

ALLEGATION 174.    However, to the extent that it is deemed a restrictive covenant, it should be deemed terminated or unenforceable as a result of the change in conditions in the uses and circumstances surrounding the Subject Property.

**ANSWER 174.** **The allegations contained in paragraph 174 are denied as**

**untrue.**

ALLEGATION 175.    Under Michigan common law, a change in the conditions of a neighborhood can warrant a court terminating a restrictive covenant or deeming it unenforceable.

**ANSWER 175.** **Paragraph 175 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant denies the legal contentions contained in paragraph 175 as untrue.**

ALLEGATION 176.    The parking lot's change in ownership and change in use as a public parking lot for the Brewery's customers, the White Pine Trail users, the Rogue River kayak and canoe users, and the other downtown businesses is a change in the adjacent land uses that frustrates the original purpose of restricting the Subject Property to "destination" businesses, as it leaves no dedicated space for those who would be drawn to the location by those businesses.

**ANSWER 176.** **The allegations contained in paragraph 176 are denied as untrue.**

ALLEGATION 177.    In light of these changed conditions, the restrictions on uses in the PUD Agreement are obsolete and fail to fulfill the original intent of the PUD Agreement.

**ANSWER 177.** **The allegations contained in paragraph 177 are denied as untrue.**

ALLEGATION 178.    The Court should declare that the PUD Agreement, to the extent it is a restrictive covenant, is terminated or is no longer enforceable and grant DJT Properties the further relief requested below.

**ANSWER 178.** **The allegations contained in paragraph 178 are denied as untrue.**

<u>**COUNT V**</u>
<u>**EQUAL PROTECTION – AS APPLIED**</u>

ALLEGATION 179.    DJT Properties incorporates and realleges the preceding paragraphs as if fully restated herein.

**ANSWER 179.** **The defendant incorporates paragraphs 1 through 178 of its Answer.**

46

ALLEGATION 180.    The United States Constitution guarantees that no person shall be denied the equal protection of the laws.  US Const, Am XIV.

**ANSWER 180.        Paragraph 180 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 180.**

ALLEGATION 181.    The equal protection clauses require all persons, including corporations and other business entities, who are similarly situated to be treated alike by their governments.

**ANSWER 181.        Paragraph 181 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 181.**

ALLEGATION 182.    The City's denial of DJT Properties' Application for the Expanded Permitted Uses while allowing such uses as of right in the remainder of downtown is unlawful discrimination, as it is not based on rational distinctions that reasonably advance a legitimate governmental interest, is arbitrary and capricious, and is improperly motivated by animus toward DJT Properties and its agents.

**ANSWER 182.        The allegations contained in paragraph 182 are denied as untrue.**

ALLEGATION 183.    The actions of the city violate DJT Properties' equal-protection rights and, therefore, violate the United States Constitution and the Federal Civil Rights Act, 42 USC 1983.

**ANSWER 183.        The allegations contained in paragraph 183 are denied as untrue.**

ALLEGATION 184.    The Zoning Ordinance only permits amendment to an approved PUD Agreement under specific circumstances.  Zoning Ordinance § 13.13.

**ANSWER 184.         Since Section 13.13 does not apply to the plaintiff's request to revise the recorded deed restrictions and the Revised and Restated Development Agreement, the allegations contained in paragraph 184 are denied as untrue.**

ALLEGATION 185.    The Board of Zoning Appeals has no authority to hear any variance request or waive any requirements related to a PUD.  Zoning Ordinance § 13.10(E).

**ANSWER 185.         It is denied as untrue that Section 13.10(E) applies to the plaintiff's request to revise the recorded deed restrictions and the Amended and Restated Development Agreement. It is admitted the Board of Zoning Appeals has no authority to hear an appeal regarding the plaintiff's request to revise the recorded deed restrictions and the Revised and Restated Development Agreement.**

ALLEGATION 186.    DJT Properties has complied with all of the submission requirements of an original PUD Application.

**ANSWER 186.         It is denied as untrue that the PUD application process applies to the plaintiff's request to revise the recorded deed restrictions and the Revised and Restated Development Agreement.**

ALLEGATION 187.    Since the Zoning Ordinance precludes the Board of Zoning Appeals from hearing any variance request or waiving any requirements related to PUDs, DJT Properties has exhausted its administrative remedies; thus, the actions of the City in violating DJT Properties' constitutional rights are ripe for review.

**ANSWER 187.         Paragraph 187 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 187.**

ALLEGATION 188.    This  equal-protection  violation  should  be  remedied  by invalidating the unconstitutional PUD Decision, Promenade PUD, and PUD Agreement, and by granting DJT Properties the further relief requested below.

**ANSWER 188.        In that here has been no equal protection violation, the**

**allegations contained in paragraph 188 are denied as untrue and the plaintiff should**

**be denied any relief.**

## COUNT VI
## VIOLATION OF THE DORMANT COMMERCE CLAUSE

ALLEGATION 189.    DJT  Properties  incorporates  and  realleges  the  preceding paragraphs as if fully restated herein.

**ANSWER 189.        The defendant incorporates by reference paragraphs 1**

**through 188 of its Answer.**

ALLEGATION 190.    The  Dormant  Commerce  Clause  of  the  United  States Constitution prohibits Michigan and other states from discriminating against interstate commerce.  US Const, art I, § 8.

**ANSWER 190.        Paragraph 190 does not contain properly pled allegations**

**of fact but contains improper legal contentions to which no response is required. To**

**the extent a response is required, the defendant is without knowledge or information**

**sufficient to form a belief as to the truth of the legal contentions contained in**

**paragraph 190.**

ALLEGATION 191.    The PUD Agreement, as amended, which embodies the use restrictions of the Promenade PUD, explicitly states that the Subject Property shall not include "national submarine sandwich franchises," "national fast-food hamburger chains," or "mass-marketed" bakeries similar to Dunkin' Donuts.

**ANSWER 191.        It is denied as untrue paragraph 191 accurately states the**

**use restrictions that apply to the property. In further answer the defendant states that**

**the Amended and Restated Development Agreement permits uses on the first floor to**

**include "sit down" restaurants regardless of whether they are based in the State of**

**Michigan or another State; specialty food retailers, specialty grocery retailers, and**

**delis or coffee shops, regardless of whether they are based in the State of Michigan or**

**another State. In further answer the defendants state the Amended and Restated**

**Development Agreement identifies fast food restaurants as a type of use that would**

**not be allowed, regardless of whether it was based in the State of Michigan or another**

**State.**

ALLEGATION 192.    In its Application for Expanded Permitted Uses, DJT Properties requested that the City allow a "fast causal" restaurant in the Promenade, similar to Panera Bread.

**ANSWER 192.        It is admitted that plaintiff requested that a "fast casual"**

**restaurant similar to Panera Bread be allowed in its application to revise the recorded**

**deed restrictions and the Amended and Restated Development Agreement.**

ALLEGATION 193.   The city Council, in making the PUD Decision, voiced its opposition to allowing national chain restaurants into downtown Rockford.  Specifically, a commissioner stated "national food is not the right thing for Rockford."

**ANSWER 193.        The allegations contained in paragraph 193 are denied as**

**untrue.**

ALLEGATION 194.   The PUD Decision, Promenade PUD, and PUD Agreement, on their face and as applied, violate the Dormant Commerce Clause by discriminating against interstate commerce in violation of the United States Constitution and Federal Civil Rights Act, 42 USC 1983.

**ANSWER 194.        The allegations contained in paragraph 194 are denied as**

**untrue.**

ALLEGATION 195.   The Court should declare that the PUD Decision, promenade PUD, and PUD Agreement are unconstitutional, enjoin the enforcement of the Promenade PUD and PUD Agreement, and grant DJT properties the further relief requested below.

**ANSWER 195.**         **In that here has been no unconstitutional action, the allegations contained in paragraph 195 are denied as untrue and the plaintiff should be denied any relief.**

### COUNT VII
### SUBSTANTIVE DUE PROCESS – AS APPLIED

ALLEGATION 196.   DJT Properties incorporates and realleges the preceding paragraphs as if fully restated herein.

**ANSWER 196.**         **The defendant incorporates by reference paragraphs 1 through 195 of its Answer.**

ALLEGATION 197.   The Due Process Clauses of the Michigan Constitution and United States Constitution protect the rights of persons, including corporations and other business entities, from deprivation of the hands of arbitrary and capricious government action.

**ANSWER 197.**         **Paragraph 197 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 197.**

ALLEGATION 198.   The Promenade PUD and PUD Agreement are not reasonably related to public health, safety, welfare, or any other legitimate government interest.

**ANSWER 198.**         **The allegations contained in paragraph 198 are denied as untrue.**

ALLEGATION 199.   The Promenade PUD and PUD Agreement, as applied to the Subject Property, constitute an arbitrary and capricious exclusion of legitimate land uses by prohibiting the Expanded Permitted Uses on an isolated parcel in a commercial downtown area where such uses are otherwise allowed.

**ANSWER 199.** **The allegations contained in paragraph 199 are denied as untrue.**

ALLEGATION 200.    The City's PUD Agreement and PUD Decision, as applied to the Subject Property, violate DJT Properties' substantive due process rights under the Michigan Constitution, the United States Constitution, and the Federal Civil Rights Act, 42 USC 1983.

**ANSWER 200.** **The allegations contained in paragraph 200 are denied as untrue.**

ALLEGATION 201.    The Court should declare that the PUD Decision, Promenade PUD, and PUD Agreement are unconstitutional, enjoin enforcement of the Promenade PUD and PUD Agreement, and grant DJT Properties the further relief requested below.

**ANSWER 201.** **In that here has been no unconstitutional action, the allegations contained in paragraph 201 are denied as untrue and the plaintiff should be denied any relief.**

## COUNT VIII
## PROCEDURAL DUE PROCESS

ALLEGATION 202.    DJT Properties incorporates and realleges the preceding paragraphs as if fully restated herein.

**ANSWER 202.** **The defendant incorporates by reference paragraphs 1 through 201 of its Answer.**

ALLEGATION 203.    The Michigan Constitution and United States Constitution require constitutionally sufficient procedure to ensure fundamental fairness and preclude the government from depriving a person of liberty or property without due process of law.

**ANSWER 203.** **Paragraph 203 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 203.**

ALLEGATION 204. This procedural due process protects an individual with a protected property interest by ensuring that there is a meaningful opportunity to be heard by an impartial decision maker.

**ANSWER 204. Paragraph 204 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 204.**

ALLEGATION 205. In allowing Mr. Rasmussen's participation in the Planning Commission's decision-making despite his obvious conflicts and bias, the City deprived DJT Properties of an impartial decision maker in a proceeding that affects DJT Properties' property rights.

**ANSWER 205. The allegations contained in paragraph 205 are denied as untrue.**

ALLEGATION 206. In doing so, the City thus deprived DJT Properties of its property rights without due process of law in violation of the due process clauses of the United States Constitution and the Michigan Constitution, and the Federal civil Rights Act, 42 USC 1983.

**ANSWER 206. The allegations contained in paragraph 206 are denied as untrue.**

ALLEGATION 207. The Court should declare the PUD Decision unconstitutional, enjoin the enforcement of the Promenade PUD and PUD Agreement, which are being enforced pursuant to an unconstitutional decision, and grant DJT Properties the further relief requested below.

**ANSWER 207. In that here has been no unconstitutional action, the allegations contained in paragraph 207 are denied as untrue and the plaintiff should be denied any relief.**

**COUNT IX**
**TAKING WITHOUT JUST COMPENSATION**

ALLEGATION 208.   DJT Properties incorporates and realleges the preceding paragraphs as if fully restated herein.

**ANSWER 208.         The defendant incorporates by reference paragraphs 1**

**through 207 of its Answer.**

ALLEGATION 209.   The Michigan Constitution guarantees that "[p]rivate property shall not be taken for public use without just compensation therefore being first made or secured in a manner prescribed by law."  Const 1963, art 10, § 2.

**ANSWER 209.         Paragraph 209 does not contain properly pled allegations**

**of fact but contains improper legal contentions to which no response is required. To**

**the extent a response is required, the defendant is without knowledge or information**

**sufficient to form a belief as to the truth of the legal contentions contained in**

**paragraph 209.**

ALLEGATION 210.   The United States Constitution guarantees that private property shall not be taken for public use, without just compensation.  US Const, Am V.

**ANSWER 210.         Paragraph 210 does not contain properly pled allegations**

**of fact but contains improper legal contentions to which no response is required. To**

**the extent a response is required, the defendant is without knowledge or information**

**sufficient to form a belief as to the truth of the legal contentions contained in**

**paragraph 210.**

ALLEGATION 211.   If (1) the character of the governmental action is such that the aggrieved property owner is singled out to pay for the public good, (2) the land use regulation has interfered with the property owner's reasonable investment-backed expectations, and (3) the land has suffered a severe diminution in value, then the government regulation amounts to a regulatory taking and the property owner must receive just compensation.

**ANSWER 211.         Paragraph 211 does not contain properly pled allegations**

**of fact but contains improper legal contentions to which no response is required. To**

**the extent a response is required, the defendant is without knowledge or information**

**sufficient to form a belief as to the truth of the legal contentions contained in**

**paragraph 211.**

ALLEGATION 212.   The PUD Decision, Promenade PUD, and PUD Agreement impose such unique and exacting control over the Subject Property that they essentially single out DJT Properties to subsidize the City's objective of furnishing a destination business for the sake of the rest of the City's downtown businesses at DTJ Properties' expense.

**ANSWER 212.        The allegations contained in paragraph 212 are denied as**

**untrue. In further answer the defendant states that plaintiff was fully aware of the**

**restrictions contained in the recorded deed restrictions and the Amended and**

**Restated Development Agreement when it purchased the property and the City has**

**not placed any further restrictions on the property since the plaintiff purchased it.**

ALLEGATION 213.   The PUD Decision, Promenade PUD, and PUD Agreement, as applied to DJT Properties, interfere with DJT Properties' reasonable investment-backed expectations of making a profit by leasing out the various tenant spaces.  Mr. Trierweiler would not have purchased the space without an expectation that he could make a profit.  This profit expectation has been thwarted by the City's refusal to allow any economically viable businesses on the first floor of the Subject Property.

**ANSWER 213.        The allegations contained in paragraph 213 are denied as**

**untrue. In further answer the defendant states that plaintiff was fully aware of the**

**restrictions contained in the recorded deed restrictions and the Amended and**

**Restated Development Agreement when it purchased the property and the City has**

**not placed any further restrictions on the property since the plaintiff purchased it. It**

**is further denied as untrue that the City is obligated to guarantee that plaintiff makes**

**a profit from the use of the property.**

ALLEGATION 214.    The land has suffered a severe diminution in value as a result of the PUD Decision, Promenade PUD, and PUD Agreement.

**ANSWER 214.        The allegations contained in paragraph 214 are denied as**

**untrue. In further answer the defendant states that plaintiff was fully aware of the**

**restrictions contained in the recorded deed restrictions and the Amended and Restated Development Agreement when it purchased the property and the City has not placed any further restrictions on the property since the plaintiff purchased it.**

ALLEGATION 215.   Collectively, the PUD Decision, Promenade PUD, and PUD Agreement amount to a regulatory taking in violation of the Michigan Constitution, the United States Constitution, and the Federal Civil Rights Act, 42 USC 1983.

**ANSWER 215.        The allegations contained in paragraph 215 are denied as untrue.**

ALLEGATION 216.   DJT Properties has been damaged in an amount greater than $25,000.

**ANSWER 216.        The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 216.**

<u>**COUNT X**</u>
<u>**UNLAWFULLY EXCESSIVE FEES**</u>

ALLEGATION 217.   DJT Properties incorporates and realleges the preceding paragraphs as if fully restated herein.

**ANSWER 217.        The defendant incorporates by reference paragraphs 1 through 216 of its Answer.**

ALLEGATION 218.   The MZEA authorizes a local unit of government to impose fees that are reasonable. MCL 125.3406(1).

**ANSWER 218.        Paragraph 218 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required, the defendant is without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 218.**

ALLEGATION 219.   The City's assessment of its legal and professional costs on DJT Properties is unlawful because the fees are unreasonable.

**ANSWER 219.** **The allegations contained in paragraph 219 are denied as untrue.**

ALLEGATION 220.   DJT Properties' application for Expanded Permitted Uses includes requests for uses already permitted as of right in downtown.  The City is only considering whether it will permit uses of the Subject Property that are already permitted across the street from the Promenade.

**ANSWER 220.** **The allegations contained in paragraph 220 are denied as untrue. The plaintiff's application was to revise. the restrictions contained in the recorded deed restrictions and the Amended and Restated Development Agreement.**

ALLEGATION 221.   The legal fees the City charged DJT Properties are unreasonable and unlawful because rather than being related to the consideration of the application, they are instead related to the solicitation of advice regarding how to run meetings and interpret its Own Zoning Ordinances.

**ANSWER 221.** **The allegations contained in paragraph 221 are denied as untrue.**

ALLEGATION 222.   The planning-consultant fees that the City charged were unreasonable and unlawful because they were frivolous and unrelated to the City's decision; the City did not actually use, and demonstrated that it had no intention of using, the information, advice, and recommendations of its own planning consultant.

**ANSWER 222.** **The allegations contained in paragraph 222 are denied as untrue.**

ALLEGATION 223.   In light of the relatively simple nature of the case and the numerous fees assessed that were unrelated to the application, the fees were excessive and unreasonable and therefore not permitted under the MZEA.

**ANSWER 223.** **The allegations contained in paragraph 223 are denied as untrue.**

ALLEGATION 224.   The Court should order the City to return to DJT Properties the amount of fees paid in excess of a reasonable charge, and it should also grant DJT Properties the further relief requested below.

**ANSWER 224.** **It is denied as untrue that plaintiff is entitled to any relief.**

WHEREFORE, for the foregoing reasons, the defendants, CITY OF ROCKFORD, CITY OF ROCKFORD PLANNING COMMISSION, and the CITY OF ROCKFORD CITY COUNCIL, respectfully request this Honorable Court enter judgment of no cause of action in their favor and costs as allowed by law.

Respectfully submitted,

DATED:  March 1, 2021                    PLUNKETT COONEY


BY:   */s/Michael S. Bogren*
            Michael S. Bogren (P34835)
            Attorney for Defendants

BUSINESS ADDRESS:
333 Bridge Street, NW., Suite 530
Grand Rapids, Michigan  49504
**Direct Dial:  269/226-8822**
mbogren@plunkettcooney.com


## AFFIRMATIVE DEFENSES

NOW COME defendants, CITY OF ROCKFORD, CITY OF ROCKFORD PLANNING COMMISSION, and the CITY OF ROCKFORD CITY COUNCIL, by and through their attorneys, PLUNKETT COONEY, and raise the following Affirmative Defenses to the Plaintiff's Complaint:

1.      The plaintiff lacks standing as it had full knowledge of the restrictions on the use of the property at the time it purchased the property.

2.      The plaintiff cannot demonstrate interference with investment backed expectations as the plaintiff was fully aware of the restrictions on the use of the property when it purchased the property.

3.    The plaintiff has no protected property interest in obtaining discretionary revisions to the recorded deed restrictions and the Amended and Restated Development Agreement.

4.    In the absence of a protected property interest the plaintiff cannot maintain a procedural or substantive due process claim.

5.    The plaintiff has failed to identify any similarly situated person or entity receiving different treatment in order to sustain an equal protection claim.

6.    The plaintiff's procedural due process claim fails as the plaintiff cannot prove the absence of an adequate state remedy.

7.    The City's decision to grant limited additional uses to property is neither arbitrary nor capricious.

8.    The plaintiff's Dormant Commerce Clause claim fails as the Amended and Restated Development Agreement does not discriminate on its face against interstate commerce.

9.    The plaintiff's Dormant Commerce Clause claim fails as the Amended and Restated Development Agreement does not favor in-state economic interests over out-of-state economic interests.

10.    The plaintiff's Dormant Commerce Clause claim fails as the Amended and Restated Development Agreement applies equally to in-state and out-of-state businesses.

11.    The plaintiff has failed to join all necessary parties under Fed. R. Civ. P. 19(a).

12.    The City of Rockford City Council and the City of Rockford Planning Commission are not separate legal entities capable of being sued.

59

13.     There is no implied damages claim for an alleged violation of the Michigan

Constitution.

14.     One or more of the plaintiff's claims may be barred by the statute of frauds.


                                    Respectfully submitted,

DATED: March 1, 2021                PLUNKETT COONEY


                                    BY:  /s/Michael S. Bogren
                                         Michael S. Bogren (P34835)
                                         Attorney for Defendants

                                    BUSINESS ADDRESS:
                                    333 Bridge Street, NW., Suite 530
                                    Grand Rapids, Michigan  49504
                                    **Direct Dial:  269/226-8822**
                                    mbogren@plunkettcooney.com

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

DJT PROPERTIES, LLC, a Michigan limited
Liability company,

      Plaintiff,

Case No.  1:21-cv-00182

HON. JANET T. NEFF

v.

CITY OF ROCKFORD, a Michigan municipal
Corporation, the CITY OF ROCKFORD
PLANNING COMMISSION, and the CITY
OF ROCKFORD CITY COUNCIL,

      Defendants.
_____/

**JURY DEMAND**

NOW COME the defendants CITY OF ROCKFORD, CITY OF ROCKFORD PLANNING COMMISSION, and the CITY OF ROCKFORD CITY COUNCIL, by and through their attorneys, PLUNKETT COONEY, and hereby demand a trial by jury in the above matter.

Respectfully submitted,

DATED:  March 1, 2021      PLUNKETT COONEY


BY:___*/s/Michael S. Bogren*_____
      Michael S. Bogren (P34835)
      Attorney for Defendants

BUSINESS ADDRESS:
333 Bridge Street, NW., Suite 530
Grand Rapids, Michigan  49504
**Direct Dial:  269/226-8822**
mbogren@plunkettcooney.com

Open.00560.10842.25835505-1

61